# Newark

**Cory Booker**
Mayor

**Department of Law**

920 Broad Street
Newark NJ 07102
973-733-3880
Fax 973 733-5394

**Anna P. Pereira**
Corporation Counsel

Gary S. Lipshutz
Assistant Corporation Counsel
Direct Dial (973) 733-5945
lipshutzg@ci.newark.nj.us

April 23, 2014

**Via Electronic Filing**
Hon. Katharine S. Hayden, U.S.D.J.
United States District Court
District of New Jersey
U.S. Post Office and Court House
Newark, New Jersey 07102

Re:   Simkova v. City of Newark et al.
        Docket No. 13-cv-1264 (KSH)

**Opposition to Plaintiffs' Motion for Reconsideration**

Dear Judge Hayden:

On this motion, Plaintiff has not shown an intervening change in the controlling law, the availability of new evidence that was <u>not available</u> at an earlier time, or the need to correct a clear error of law or fact. As a result, the Court should not reconsider the dismissal of the Plaintiff's claims against the City of Newark ("City").

We respectfully request oral argument on this motion.

### Framework for a motion for reconsideration

<u>Procedurally</u>, Local Civil Rule 7.1(i) provides that "[a] motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion. . . ." Apart from this express time limitation, in a motion for reconsideration the movant may address only matters that were presented to the Court, but were not considered by the Court, in making the decision at issue. <u>United States v. Compaction Sys. Corp.</u>, 88 F. Supp. 2d 339, 345 (D.N.J. 2000). A party asserting a difference of opinion with a court's decision should not bring a motion for reconsideration; rather, he or she should seek relief through the normal appellate process. <u>Chicosky v. Presbyterian Med. Ctr.</u>, 979 F. Supp. 316, 318 (D.N.J. 1997).

Simkova v. City of Newark et al.
Docket No. 13-cv-1264 (KSH)
Hon. Katharine S. Hayden, U.S.D.J.
April 23, 2014
Page - 2 –

Moreover, reconsideration is not to be used as a means of expanding the record to include matters not originally before the court. Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision. Resorts Int'l v. Greate Bay Hotel & Casino, Inc., 830 F. Supp. 826, 831, n. 3 (D.N.J. 1992).

Substantively, "it is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int"l, 830 F. Supp. at 831. As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." North River Ins. Co. v. CIGNA Reins. Co., 52 F. 3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling. Local Civil Rule 7.1(i) provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has "overlooked." The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int"l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat"l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

**Arguments in Opposition**

**1. The "newly-discovered" evidence from the City of New York Police Department**

We would like to immediately dispel any notion that the City somehow acted inappropriately with respect to the materials obtained from the City of New York by way of subpoena. These materials were received by the City on March 14, 2014 – two days after oral argument on the motions to dismiss - and were served upon all parties on March 20, 2014.

Plaintiff's brief (on p. 4) "suggests" some nefarious action by the City in the manner in which it served such documents, implying that the City somehow delayed serving these records. That implication could not be further from the truth. To clear up

Case 2:13-cv-01264-KSH-CLW   Document 63   Filed 04/23/14   Page 3 of 6 PageID: 533

Simkova v. City of Newark et al.
Docket No. 13-cv-1264 (KSH)
Hon. Katharine S. Hayden, U.S.D.J.
April 23, 2014
Page - 3 –

any confusion, and to ensure that Your Honor is fully aware of the exact timing of the City's receipt and service of these documents, what follows is exactly how the City obtained the records from the City of New York.

On December 4, the City served a subpoena upon the New York City Police Department, Missing Persons Unit, Records Section, located at 1 Police Plaza, New York, NY 10038, with a copy upon the City of New York Law Department, 100 Church Street, New York NY 10007, via First Class Mail.  The return date of the subpoena was January 10, 2014.  See Subpoena, attached as **Exhibit A** to Lipshutz Declaration.

The City received no response at all to this subpoena.  Lipshutz Declaration at ¶4.  Therefore, on February 4, 2014, the City prepared and attempted to serve a second subpoena, this time upon the "New York City Police Department, Subpoena Litigation Unit," located at Room 110, 1 Police Plaza, New York, NY 10038.  See **Exhibit B** to Lipshutz Declaration.  The City attempted to serve this subpoena via N.J. Lawyers Service but service was apparently refused by the City of New York Police Department.  See, N.J. Lawyers Service return receipt marked, "Refused to Accept", attached as **Exhibit C** to Lipshutz Declaration.

The City then prepared and served a third subpoena upon the "New York City Police Department, Subpoena Litigation Unit," located at Room 110, 1 Police Plaza, New York, NY 10038, on February 4, 2014. See **Exhibit D** to Lipshutz Declaration.  This subpoena was served three ways; (1) First Class Mail; (2) Certified Mail (Return Receipt Requested); and (3) by Guaranteed Subpoena Service.  It was delivered by the United States Postal Service on February 10, 2014.  See, Return Receipt, attached as **Exhibit E** to Lipshutz Declaration.  Guaranteed Subpoena Service also delivered it, although somewhat later, on February 25, 2014.  See, Proof of Service, attached as **Exhibit F** to Lipshutz Declaration.

After numerous frustrating phone calls to the City of New York Police Department to get an update on the status of the subpoena, the undersigned finally was provided with the name of a contact person.  On March 5, 2014, the undersigned wrote to Detective Jaclyn Keane of the New York City Police Department seeking assistance.  Detective Keane responded on March 5, 2014 that the City's request was being processed by the City of New York by Investigator John-Hollier.  See, emails, attached as **Exhibit G** to Lipshutz Declaration.

The undersigned then called Investigator John-Hollier.  She indicated that she had requested the file from the precinct and told me to call her in a few weeks if I had not heard from her.  Lipshutz Declaration at ¶11.

<u>Simkova v. City of Newark et al.</u>
Docket No. 13-cv-1264 (KSH)
Hon. Katharine S. Hayden, U.S.D.J.
April 23, 2014
Page - 4 –

The parties then appeared for oral argument before Your Honor on March 12, 2014.

Two days after oral argument, on Friday, March 14, 2014, the City received the subpoenaed documents from the City of New York. See, "stamped" cover correspondence, attached as **Exhibit H** to Lipshutz Declaration.[1] The undersigned did not get these documents personally until Tuesday, March 18, 2014 (because of the City's internal mail handling procedures). Lipshutz Declaration at ¶13. The undersigned then personally made copies and sent them to all counsel via Lawyers Service on March 20, 2014. Lipshutz Declaration at ¶14.

At the time of oral argument before Your Honor (March 12, 2014), the undersigned was not aware that the documents were forthcoming or even that such documents existed. Moreover, as soon as the undersigned personally received them, they were turned them over to all counsel. Lipshutz Declaration at ¶15. No attempt was made to ever hide any information or to delay its dissemination. To be sure, as Plaintiff's counsel admits, he received these documents far in advance of Your Honor's March 31, 2014 Order and Opinion on the motions.

Plainly the City did nothing wrong with respect to its handling of these documents. Putting all of that aside, none of these documents are "new" evidence as that term is understood. This is because Plaintiff does not indicate why the documents ultimately obtained by the City were not equally available and obtainable by the Plaintiff. Plainly, Plaintiff could have subpoenaed the New York City Police Department just as the City did. Plaintiff could have made her own efforts to obtain these records just as the City did. We fail to see how these documents were not "previously available" to the

---

[1] The undersigned provided all counsel with the "stamped" cover page indicating that the City received the documents on March 14, 2014, **(Exhibit H** to Lipshutz Declaration) precisely because we wanted to dispel any notion that the City had received these documents earlier and had not served them. Inexplicably, Plaintiff's counsel did not disclose that fact to Your Honor in the moving pages or attach that "stamped" cover page as an exhibit. Instead, Plaintiff's argument suggests that that the City possessed these documents earlier and only turned them over after oral argument, "The information and documents received by Newark were not sent to our office until March 20, 2014, more than a week after oral arguments were held." (Moving Brief at p. 4). In this context, the Plaintiff's omission of the "stamped" cover page demonstrating post-argument receipt shows a lack of candor with Your Honor and is absolutely misleading. Had Plaintiff's counsel simply provided that cover page to Your Honor, it would have been obvious that the City did not delay serving these documents and did not even have them in its possession at the time of oral argument.

Simkova v. City of Newark et al.
Docket No. 13-cv-1264 (KSH)
Hon. Katharine S. Hayden, U.S.D.J.
April 23, 2014
Page - 5 –

Plaintiff had Plaintiff merely made the attempt to obtain them.  Under these circumstances, we do not agree that these documents are "new" evidence.  Rather, the evidence was always there to be obtained by whoever made the effort to obtain it.  The City made the effort.  Plaintiff could have and should have done so, too.

### 2. Plaintiff's substantive arguments are without merit

In the moving papers, Plaintiff does not argue any intervening change in law. Plaintiff argues that the "new" evidence proves that "Newark" was deliberately indifferent.  Plaintiff simply ignores the key legal question here; whether the Plaintiffs have stated a constitutional cause of action in the Complaint.  This Court carefully considered the allegations in the pleadings and concluded that what was pled was not sufficient; that the turn of events which led to the burial of Mr. Simko was unfortunate but that there was nothing to demonstrate any City employee undertook any deliberate effort to violate the Plaintiff's constitutional rights.

Plaintiff misconstrues the framework of the original motions.  The City's motion did not seek summary judgment.  Rather, the City's motion argued that Plaintiff did not state a constitutional claim as a matter of law.  The motion was on the pleadings.  The few references to materials outside the pleadings – as acknowledged by the Your Honor in the Court's opinion (at p. 5-6) – were utilized only as general background and were, for the most part, not challenged by any of the defendants.

Consequently, the "new" evidence presented in support of this motion does not change any of the analysis.  Nothing cited by the Plaintiff supports the notion that the City had an unconstitutional policy, custom or practice.  Certainly there is nothing cited that would indicate some deliberately indifferent action by the City.

Plaintiff identifies three factual items which she claims warrant this Court's reconsideration:

First, according to the "new" New York City Police Department's documents, NYPD Detective Edward St. John contacted the Newark Police and spoke with City "Officer" Smitty.[2]  It is reflected in the records that "Officer" Smitty told Det. St. John that the City had no record (either arrest or unidentified person) matching Michael Simko and told Det. St. John to contact two local hospitals.

---

[2] There is no "Officer" Smitty, #154, in the Newark Police Department.  We believe that the reference in the New York City Police Department's documents is, instead, to City civilian police 9-1-1 call taker Miriam Smith, #154.  Lipshutz Declaration at ¶16.

Case 2:13-cv-01264-KSH-CLW   Document 63   Filed 04/23/14   Page 6 of 6 PageID: 536

Simkova v. City of Newark et al.
Docket No. 13-cv-1264 (KSH)
Hon. Katharine S. Hayden, U.S.D.J.
April 23, 2014
Page - 6 –

Second, the Medical Examiner's office contacted the Newark Police to notify that Michael Simko's body would be buried and to request additional time if needed to locate next of kin.  There is no evidence how the City responded to that notification.

Third, another New York City Police Detective spoke to Newark Police Sergeant Cardona who reported that a computer check of criminal history, complaints, accident, and "aided" reports yielded negative results for Michael Simko.

None of this "new" evidence cited by the Plaintiff supports the concept that any City employee acted in any way other than perhaps negligently.  But that argument is nothing new on this motion.  The City previously argued that negligence was not sufficient to state a constitutional claim.  Indeed, Your Honor considered that very argument in the Court's opinion (p. 16), "Here, as argued by the defendants, the pleaded facts show, at best, heightened negligence: errors in taking and following up on missing persons reports."   The "new" factual information highlighted by the Plaintiff on this motion perhaps would bolster a negligence claim but adds nothing to prove a constitutional violation.

### 3.  Conclusion

For these rather straight-forward reasons, the City respectfully submits that the motion for reconsideration be denied.

    Respectfully Submitted,

    Anna P. Pereira,
    Corporation Counsel

    By:  /s/ Gary S. Lipshutz
        Gary S. Lipshutz
        Assistant Corporation Counsel

/GSL