FISHBEYN & BRISKIN, LLC
By: Peter Briskin, Esq.
P.O. Box 489
Hillsdale, NJ 07642

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZDENKA SIMKOVA,<br><br>               Plaintiff,<br><br>vs.<br><br>CITY OF NEWARK, NEWARK POLICE DEPARTMENT, ETERNITY FUNERAL SERVICES, LLC, JOHN DOES "A" through "Z" (fictitious names used to describe unknown defendants acting individually and in their official capacities) and ABC CORPORATIONS "A" through "Z" (fictitious names used to describe unknown defendants).<br><br>               Defendants. | Civil Action No.: **2:13-cv-01264-KSH-PS** |

## BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

## TABLE OF CONTENTS

**Pages**

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................ ii-iii

Preliminary Statement ......................................................................................................... 1

Introduction ..................................................................................................................... 1-2

Procedural History ........................................................................................................... 2-3

Statement of Facts ........................................................................................................... 3-7

Argument ......................................................................................................................... 7-22

**PLAINTIFF HAS MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15**

POINT I ........................................................................................................................... 8-13

**THERE IS NO UNDUE DELAY IN THE PLAINTIFF'S APPLICATION TO AMEND HER COMPLAINT**

POINT II ........................................................................................................................ 13-15

**DEFENDANTS WILL NOT BE PREJUDICED BY THE PROPOSED AMENDMENTS**

POINT III ...................................................................................................................... 15-22

**THE CLAIMS IN THE PROPOSED AMENDED COMPLAINT RELATE BACK TO THE ORIGINAL COMPLAINT**

1. Plaintiff has met the standard of Rule 15(c)(1)(C)(i) of the Federal Rules of Civil Procedure. ................................................................................................... 17

2. Plaintiff has met the standard of Rule 15(c)(1)(C)(i) of the Federal Rules of Civil Procedure. ................................................................................................... 17

3. Plaintiff has met the standard of Rule 15(c)(1)(C)(ii) of the Federal Rules of Civil Procedure. ................................................................................................... 19

Conclusion ................................................................................................................22

**TABLE OF AUTHORITIES**

**<u>Cases</u>**                                                                                              **<u>Pages</u>**

<u>Adams v. Gould, Inc.</u>, 858, 868 (3d Cir. 1984) ...............................................9

<u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, (3d Cir. 2006)...............................8, 21

<u>Bensel v. Allied Pilots Ass'n</u>, 387 F.3d 298, 310 (3d Cir. 2004) ....................17

<u>Cureton v. NCAA</u>, 252 F.3d 267, 273 (3d Cir. 2001) ......................................9

<u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962) ....................................................8

<u>Garvin v. City of Philadelphia</u>, 354 F.3d 215, 220 (3d Cir. 2003) .................17

<u>Grasso v. Consolidated Rail Corp</u>, 2013 U.S. Dist. LEXIS 86738 (D.N.J. 1986)...........................8

<u>Heyl & Paterson Int'l Inc.v. F.D. Rich House. Of V.I., Inc.</u>, 663 F.2d 419, 425 (2d Cir. 1981) 8, 13

<u>Kronfeld v. First Jersey Nat'l Bank</u>, 638 F. Supp. 1454, 1460 (D.N.J 1986)..................................8

<u>Leary v. Nwosu</u>, 2007 U.S. Dist. LEXIS 74202 (E.D. Pa. 2007)........................8, 11, 13-15, 17-19

<u>Lorenz v. CSV Corp.</u>, 1 F.3d 1406, 1414 (3d Cir. 1993) ............................................13

<u>Lundy v. Adamar of N.J., Inc.</u>, 34 F.3d 1173, 1192-93 & n.13 (3d Cir. 1994)............................16

<u>Massarky v. Gen. Motors Corp.</u>, 706 F.2d 111, 125 (3d Cir. 1983)...............................15

<u>Sabatino v. Union Township</u>, 2013 U.S. Dist. LEXIS 54866 (D.N.J. 2013) ...................................8

<u>Sameric Corp. of Del, Inc. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998)................15

<u>Singletary v. Pa. Dep't of Corr.</u>, 266 F.3d 186, 189 (3d Cir. 2001) ................................. 16, 19-20

<u>Urrutia v. Harrisburg County Police Dept. et al.</u>, 91 F.3d 451, 457 (3d Cir. 1996) ......................16

TABLE OF EXHIBITS

**Exhibit A**, OPRA Request #1 .............................................................................7

**Exhibit B**, OPRA Request #2.............................................................................7

**Exhibit C**, Office of County Clerk Acknowledge of OPRA Request................................7

**Exhibit D,** Office of County Clerk Production of Documents Pursuant to OPRA Request ...........7

**Exhibit E,** Newark's Reply Letter Brief on its MTD w/ Incident Report Attached

**Exhibit F,** Newark Police Incident Report, Incident Summary, and Investigative Report......... 4-6

**Exhibit G,** New York Police Department Entry Log and Activity Summary ........................... 4-7

**Statutes**

Federal Rules of Civil Procedure 15 ....................................................................1, 8, 16-17, 19-20

N.J. Stat. Ann. Sec. 2A: 14-2 ...........................................................................................................16

## PRELIMINARY STATEMENT

Plaintiff Zdenka Simkova ("Plaintiff") respectfully moves the Court, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, for leave to file an amended complaint, a copy of which is attached hereto. The proposed amended complaint maintains the counts and allegations against the same Defendants ("Defendants") from the complaint dated March 1, 2013, however, Plaintiff seeks to substitute "John Does" for now identified police personnel ("New Defendants") then employed by the City of Newark and/or Newark Police Department who were responsible for and involved in the investigation, identification, and/or handling of the remains of Michael Simko.

## INTRODUCTION

This action arises out of the defendants' violation of Plaintiff's Due Process rights under U.S. Cont. amend. XIV § 1, 42 U.S.C. § 1983 and due process under the N.J. Const. art. 1 § 1 by failing to accept a report of missing person from the Plaintiff, burying Plaintiff's son Michael Simko without contacting the Plaintiff or searching for the Plaintiff; thus depriving the Plaintiff of her property rights over the remains of her deceased son, specifically, the right to control the funeral and disposition of his remains.

As of the time of filing of the within application, counsel for the City of Newark and Newark Police Department, Gary L. Lipshutz, Esq., had refused to consent to the filing of the proposed Amended Complaint. Mr. Lipshutz, consented only to substitute Detective Michael Chirico for John Does so long as the complaint would not seek punitive damages. Plaintiff now moves to file an amended complaint to substitute the following New Defendants for John Does: Michael Chirico (Individually and in his official capacity), P.O. J. Hadley (Individually and in his official capacity), Miguel Arroyo (Individually and in his official capacity), Bethzaida Cruz

1

(Individually and in her official capacity), Keith Jones (Individually and in his official capacity), Luis Seguinot (Individually and in his official capacity), John Evangelista (Individually and in his official capacity), Detective Vitello (Individually and in his official capacity); and P.O. Smitty (Individually and in her official capacity).

## PROCEDURAL HISTORY

On March 1, 2013 Plaintiff filed a Complaint with the United States District Court for the District of New Jersey.  Summons was issued to the Defendants City of Newark ("Newark"), City of Garfield, Garfield Police Department, Office of the New Jersey State Medical Examiner, and Eternity Funeral Services, LLC ("EFS") on March 11, 2013.  On June 27, 2013, Newark filed a Motion to Dismiss in Lieu of an Answer.  Shortly thereafter, the City of Garfield and the Office of the New Jersey State Medical Examiner filed motions to dismiss on July 9, 2013 and August 05, 2013 respectively.  Plaintiff filed Oppositions to all Defendants Motions, and on August 16th, Newark filed a Reply Brief to Plaintiff's Opposition which included the Police Report and Incident Summary regarding the Newark Police's discovery of Michael Simko.

Pursuant to the Court's Pretrial Scheduling Order dated September 6, 2013, all fact discovery was to remain open until April 16, 2014, during the pendency of all parties Motions to Dismiss.  Accordingly, discovery demands were exchanged, and while Plaintiff provided answers to discovery demands received, not all parties provided responses to Plaintiff's demands, most notably Newark.  On November 27, 2013, more than three months subsequent to the filing of their reply brief, Newark submitted a letter to the court regarding their reply, which included the Investigative Report which showed that Newark did in fact identify Michael Simko and did so within days of discovering his body.

2

On December 4, 2013, subsequent to the full submission of the their motion to dismiss, Newark served a Subpoena Duces Tecum on the City of New York Police Department ("NYPD") to produce records pertaining to their investigation into the location of Michael Simko who was reported missing, bearing a return date of January 10, 2014. It is the Plaintiff's understanding that counsel for Newark served original subpoenas on the NYPD more than once and long before oral argument in this matter. On February 12, 2014,the undersigned wrote a letter to Gary S. Lipshutz, defense counsel for Newark and Newark Police Department ("Newark PD"), requesting copies of records produced by the NYPD in response to his subpoena. The information and documents received by Newark were not sent to our office until March 20, 2014, more than a week after oral argument (March 12, 2014) on all defendants' Motion to dismiss were held. The information contained in those documents revealed additional facts supporting plaintiff's allegations as to acts undertaken by Newark which deprived Plaintiff of any interest in her son's remains.

This court granted the moving Defendants' 12(b)(6) Motion for Dismissal on March 31, 2014, and dismissed the Plaintiff's claims against Eternity Funeral Services, LLC *sua sponte*. Promptly thereafter and within the time frame permitted by the federal rules, the Plaintiff moved for reconsideration of the Court's Order, dated March 31, 2014, granting Defendants' motions for dismissal. On March 30th, 2015, one year to a tee, the court granted plaintiff's motion for reconsideration and vacated the dismissal with respect to three defendants, the City of Newark, the Newark Police Department (together, the "City of Newark"), and Eternity Funeral Services, LLC ("EFC").

## STATEMENT OF FACTS

On November 22, 2007 Michael Simko, departed from Queens, New York, by train to visit his Mother, Ms. Zdenka Simkova in Garfield New Jersey, with a friend whom he eventually separated from upon arrival in Newark, New Jersey. *See* **EXHIBIT G**, New York Police Department Entry Log and Activity Summary provided to Plaintiff on March 20, 2014.  At some point that night, he reached the alleyway where he would succumb to a heroin overdose. *See* **EXHIBIT E**, Newark Police Incident Report, Incident Summary, and Investigative Report, provided on August 16ᵗʰ and **EXHIBIT F** Newark Police Incident Report, Incident Summary, and Investigative Report, provided November 27ᵗʰ 2013.

On November 23, 2007, the Newark Police responded to several calls regarding a dead body in the alleyway behind Perry's Funeral Home, at 34 Mercer Street, Newark, New Jersey. *See* **EXHIBIT F**.  The Police Report specifically references a call from Mr. Kenneth Montgomery, who initially discovered Michael's body. *See* **EXHIBIT F**.  The Newark Police were the first to arrive on the scene, including Luis Seguinot and Keith Jones, followed Homicide Detectives Michael Chirico, J. Hadley, and Sgt. M. Arroyo.  Other respondents to the scene were EMT's who failed to resuscitate Michael, and shortly thereafter, Investigator Gene Uricolli of the Northern Regional Medical Examiner's Office. *See* **EXHIBIT F.**  Following a brief examination of the scene, Michael's body was taken by the Northern Regional Medical Examiner's Office in order to determine the cause of death. *See* **EXHIIBIT F.**  At that point, Newark began their "investigation" into Michael's identity.  ID Officer Gary Robinson responded to the Medical Examiner's office and took finger print impressions of the deceased. The Newark Police retrieved copies of Michael's Inked Fingerprint Impressions, and faxed them to the New Jersey State Police, who found no match for the prints after conducting a statewide search.  Subsequently, the prints were "launched through I-AFIS," and this resulted in a match

4

with records kept in Virginia Beach, VA on Michael Simko relating to a previous arrest. *See*
**EXHIBIT F**. The Newark Police investigative report states that as early as November 24, 2007,
Newark was aware of the identity of Michael Simko. Contrary to the Court's Opinion which
states Michael was "identified by defendant Zhongxue Hua," Michael was identified at the
behest of the Newark Police. See **EXHIBIT F**. The extent of their investigation into his identity
is summed up in a paragraph. Detective Michael Chirico made a call to the Virginia Beach
Police, who subsequently checked the address associated with Michael's name. Once they
informed Detective Michael Chirico that not only were there no family present at the address
provided, that it was not even an apartment, Detective Michael Chirico requested an article be
placed in the Star Ledger to assist with locating next of kin. *See* **EXHIBIT F**. Following this
request, the case was closed, and no other efforts were made to identify, locate, or notify
Michael's next of kin. It is clear that the Newark Police were understood to be responsible for
the investigation concerning Michael Simko's next of kin, as evidenced by the facsimile message
sent by Ms. Monica Calderon to the Newark Police.

It is already established that the Newark Police knew about Michael Simko's identity as
early as November 24, 2007. Ms. Simkova and her husband went to the Garfield Police
Department on November 25, who directed them to New York Police Department (NYPD),
where a missing persons report was filed by Angela Johnson (believed to be Michael's
girlfriend), on November 29, 2007. *See* **EXHIBIT G**. On the date that the missing persons
report was filed, NYPD Detective Edward St. John contacted the Newark Police and spoke with
P.O. Smitty (#154). *See* **EXHIBIT G**. Detective St. John relayed identifying information about
Michael Simko to the officer, who informed Detective St. John that there was no record (either
arrest, or unidentified person) matching Michael Simko. *See* **EXHIBIT G**. P.O. Smitty then

5

gave Detective St. John the number of two local hospitals that she stated Michael would have been brought to if he was found with no identification, omitting any information about the Office of the Northern Regional Medical Examiner. *See* **EXHIBIT G**.  Officer St. John called both University Hospital and St. James Hospital but met with negative results. *See* **EXHIBIT G**.

Detective St. John continued his investigation by interviewing Ms. Simkova, Bartek Haftowski (believed to be Michael's friend), and Angela Johnson. *See* **EXHIBIT G**.  While Detective St. John's investigation continued, Michael's body was stored at the Office of the Northern Regional Medical Examiner, referred to as the "Essex County Medical Examiner's Office" on the Newark Police Investigative Report. *See* **EXHIBIT F**.

On or about June 17, 2008, Monica Calderon contacted the Newark Police to notify them that Michael's body would soon thereafter be recommended for burial, and to advise her if they needed additional time to locate and notify next of kin.  It is apparent from Monica Calderon's fax message and the Office of the New Jersey State Medical Examiner's Policy and Procedure book (which states that the Office must refer the indigent individual's case to the appropriate agency for further investigation into investigation and eventually burial arrangements) that the Newark Police were responsible to take some action to identify, locate and notify Michael Simko's next of kin.  While it is certain that Newark did not locate and notify Michael's next of kin, we do not know how they responded to Ms. Calderon's fax because Newark never provided any responses to Plaintiff's Discovery Demands and they have represented that they "lost the file" that was created for Michael, if one ever existed.

On August 04, 2008 Michael's body was released by the County of Essex to EFS for interment.  That same day at 3:00 PM, Michael's body was buried at Maple Grove Park

6

Cemetery According to Mr. Aree Booker, the principal for Eternity Funeral Services, LLC, EFS inters indigent bodies pursuant to a contract with the County of Essex.

Following Michael's unceremonious pine box burial, Detective St. John transferred Michael's missing persons case to Detective Anthony Faranda on the first of October 2008. Detective Faranda continued the investigation, and contacted Sergeant Cardona of the Newark Police Department. *See* **EXHIBIT G**. On April 20, 2011, Sgt. Cardona informed Detective Faranda that a computer check of criminal history, complaints, accident, and "aided" reports yielded negative results for Michael Simko. Finally, on January 9, 2012 Detective Faranda performed "various computer checks" and discovered that not only had Michael been dead for over four years, he had been found by the Newark Police, identified shortly thereafter, and buried in August of 2008 where he remains to this day.

Prior to filing of complaint, Plaintiff's counsel served an OPRA request on January 4, 2013, for police records pertaining to the investigation of the death of Michael Simko. *See* **EXHIBIT A**. Plaintiff then served a second OPRA request on January 7, 2013. *See* **EXHIBIT B**. Receipt of OPRA request was acknowledged by the Office of the City Clerk ("City Clerk") on January 31, 2013. *See* **EXHIBIT C**. City Clerk responded to our OPRA request on April 26, 2013, providing redacted NYPD procedural documents but producing no records pertaining to the investigation of the death of Michael Simko. *See* **EXHIBIT D**.

**ARGUMENT**

**PLAINTIFF HAS MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading only with the opposing party's written consent or the court's leave.[1]  The court should freely give leave when justice so requires.[2]  The decision whether to grant leave to amend a pleading is within the sound discretion of the district court.[3]  Under Rule 15, "absent undue or substantial prejudice, an amendment should be allowed unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed, or futility of amendment."[4]

Plaintiff complied with rule 15(a)(2), having asked Gary Lipshutz, defense counsel for City of Newark and the Newark Police Department (together, the "City of Newark"), for consent to amend the Complaint.  Plaintiff now seeks leave of court to file an amended complaint to substitute now known individuals employed by the City of Newark and Newark Police Department for John Does, for the reasons set forth below.

## POINT I

### THERE IS NO UNDUE DELAY IN THE PLAINTIFF'S APPLICATION TO AMEND HER COMPLAINT

Despite the significant amount of calendar time that has passed from the date of the filing of the original complaint in this action and the within motion, plaintiff's application is not unduly delayed because the delayed procedural development and age of this lawsuit has not been the result of plaintiff's action or inaction but rather the result of defendants' procedural strategy.

"Pursuant to their discretion under Rule 15, courts generally grant leave to amend where, during the course of discovery, a party discovers "new evidence."[5]  In deciding whether there is

---

[1] Leary v. Nwosu, No. Civ.A.05-5769, 2007 U.S. Dist. LEXIS 74202, 2007 WL 2892641, at *7 (E.D. Pa. Oct. 2, 2007).

[2] As no scheduling order has been issued in this case, Federal Rule of Civil Procedure 16(b), which governs modifications to pretrial scheduling orders, is not applicable.

[3] Sabatino v. Union Township, No., 2013 U.S. Dist. LEXIS 54866, 2013 WL 1622306, at *18 (D.N.J. April 15, 2013) (citing Forman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); Heyl & Paterson Int'l Inc. v. F.D. Rich Hous. Of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981).

[4] Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006).

[5] Grasso v. Consolidated Rail Corp., No 12-368, 2013 U.S. Dist. LEXIS 86738, 2013 WL 3167761 at * 21 (D.N.J. June 20, 2013)(citing Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1460 (D.N.J June 20, 1986)).

undue delay, "the court must focus on the movant's reasons for not amending sooner. Delay alone is not sufficient; the delay must be undue."[6]

On March 1, 2013, Plaintiff filed a Complaint with the United States District Court for the District of New Jersey. On June 27, 2013, Newark filed a Motion to Dismiss in Lieu of an Answer. Plaintiff filed Opposition to Newark's Motion, and on August 16th, Newark filed a Reply Brief to Plaintiff's Opposition which included the Police Report and Incident Summary regarding Newark Police's discovery of Michael Simko. Afterward, discovery demands were exchanged but limited discovery took place as not all parties provided responses, most notably Newark.

On November 27, 2013, more than three months subsequent to the filing of their reply brief, Newark submitted the letter to the brief which included the Investigative Report which showed that Newark did in fact identify Michael Simko and did so shortly after discovering his body.

On December 4, 2013, Newark served a Subpoena Duces Tecum on the NYPD to produce records pertaining to their investigation into the location of Michael Simko who was reported missing, which had a return date January 10, 2014. On February 12, 2014, we wrote to Gary S. Lipshutz, defense counsel for Newark and Newark PD, requesting copies of records produced by the NYPD. On March 20, 2014, approximately one week after oral argument on the motions to dismiss, Newark produced the records via NJ Lawyer Service. The documents revealed the acts that Newark undertook which deprived Ms. Simkova of any interest in her son's remains.

This Court granted moving Defendants' 12(b)(6) Motions on March 31, 2014, and dismissed the Plaintiff's claims against Eternity Funeral Services, LLC *sua sponte*. Since no

---

[6] Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) (citing Adams v. Gould, Inc., 858, 868 (3d Cir. 1984)).

claims were alive after the Court's dismissal, the Plaintiff had no control over the matter because Plaintiff could not at the time file for a leave to amend her complaint.

Upon review of the documents from the NYPD produced by Newark, Plaintiff moved promptly on March 31, 2014 by filing of motion for reconsideration of the Court's Order granting Defendant's motions for dismissal and in addition, the plaintiff filed a notice of appeal with the New York 3rd Circuit Court of Appeals (Docket no: 14-2076). Plaintiff had no opportunity to file for leave to amend her complaint until the Court granted Plaintiff's motion for reconsideration. Plaintiff's motion for reconsideration was granted on March 30, 2015, one year later. Thus, Plaintiff's knowledge of potential John Does (whose identities should have been and were in fact known to their employer City of Newark and Police Department) was, has been and continues to be an evolving process which counsel for those defendants would learn of in piecemeal fashion. At this juncture it is not clear whether any other individuals employed by Newark and Newark PD may arise that had been involved in this case. Nonetheless, it is abundantly clear that plaintiff had not had the benefit of the identities of the New Defendants until after the original dismissal motions were fully submitted and that once the decision was made to grant the defendants' motions there was no more active complaint for the Plaintiff to amend. Despite plaintiff's prompt action to have her complaint reinstated based upon new evidence, it took one year for a decision to be made. As soon as that decision was reached, plaintiff filed the within application. Time elapsed which cannot be attributable to action or inaction of the plaintiff simply cannot act to bar the relief sought by plaintiff in this motion.

Accordingly, now that the case has been resurrected, Plaintiff now seeks to file for a leave to amend. Therefore, there is no undue delay in Plaintiff's request to amend.

In <u>Leary v. Nwosu</u>,[7] the plaintiff brought a pro se negligence and 42 U.S.C. § 1983 claims against various defendants based on alleged denial of medical care while he was incarcerated by the City of Philadelphia. Plaintiff's proposed amended complaint sought to add claims against entirely new defendants, the City, Prison Health Services ("PHS") and three John Doe defendants, whom the plaintiff sought to add.[8] Plaintiff's alleged injury occurred from February 23, 2004, through September 2004, while he was incarcerated by the City.[9] Plaintiff filed the motion for leave to amend complaint on May 8, 2007, more than two years later.[10] However, several procedural events took place during the 9 months between the court's granting of plaintiff's motion for appointment of counsel and the actual appointment of counsel.[11] On September 22, 2006 defendants listed on the original complaint filed a motion to dismiss plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[12] Plaintiff never filed a response to defendants' motion to dismiss and the court granted the motion without prejudice.[13] Plaintiff argued that his lack of response to the proceedings in his case is due to his belief that an attorney was handling his case since the court granted his motion for appointment of an attorney.[14]

The <u>Leary</u> court held that the plaintiff's lack of legal knowledge necessary to adequately represent himself, combined with a prompt filing of motion for leave to file an amended complaint within one month of receiving appointed counsel,[15] precluded a finding of undue delay.

---

[7] Leary, 2007 U.S. Dist. LEXIS 74202, at *1.
[8] *Id.* at *1.
[9] *Id.* at *14.
[10] *Id.*
[11] *Id.* at *4.
[12] *Id.*
[13] *Id.*
[14] *Id.* at *5.
[15] Leary, 2007 U.S. Dist. LEXIS 74202, at *1.

As seen in Leary, a delay, if any, was not the product of the Plaintiff's action or inaction. The Plaintiffs did not take any affirmative acts to cause any delay. As in the Leary case, the Plaintiff here had no opportunity to move for leave to amend the complaint given that there were no claims remaining to allow for such motion. The corresponding factor in Leary is that the plaintiff could not file for leave to amend any sooner because plaintiff had no knowledge of the defendant's 12(b)(6) motion and the subsequent dismissal of plaintiff's claim. Here, the Plaintiff could not move for leave to file an amended complaint any sooner because (1) although the motions for dismissal were fully submitted on June 27, 2013 and July 9th 2013, oral argument was only heard on 3/12/2014 with a decision a week later and (2) immediately after the plaintiff's claims were dismissed, plaintiff's motion for reconsideration remained pending for one year taking us to the very end of March 2015.

In the present case, a delay, if any, is due to the Plaintiff's lack of knowledge of the identities of the John Does named in plaintiff's original complaint as a direct result of the City of Newark and Newark Police Department's prior and ongoing idle incompetent and passive efforts into the investigation of Michael Simko. Plaintiff at all times lacked the knowledge of the identities and involvement of the New Defendants she is seeking to add through the amended complaint and therefore, could not have moved for such relief. However, the City possessed knowledge into the identities and involvement of the New Defendants at all times; New Defendants who are now identified as MICHAEL CHIRICO, P.O. J. HADLEY, MIGUEL ARROYO, BETHZAIDA CRUZ, KEITH JONES, LUIS SEGUINOT, JOHN EVANGELISTA, DECTIVE VITIELLO; and P.O. SMITTY. This is demonstrated by the Defense's submission of a letter subsequent to the reply to Plaintiff's opposition to the Newark's motion to dismiss, conceding to the fact that additional documents were obtained after their motion to dismiss was

12

fully briefed, disclosing a greater involvement by Newark in the investigation than Newark has originally indicated. It was the City of Newark that had identified Michael Simko, and not the Medical Examiner 4 days after the autopsy. Moreover, it was City Crime Scene Investigation Officer Gary Robinson who responded to the location of the DOA report and took photographs and collected evidence.

The interest of justice and judicial economy will undoubtedly be served by having all allegations properly before the Court as set forth in Plaintiff's proposed amended complaint. The amendments are narrowly tailored to reflect the present circumstances and Plaintiff's present understanding of the facts of this case. There is no undue delay sufficient to justify denial of plaintiff's motion for leave to amend and the proceedings to date which have been out of the control of the plaintiff should not serve to act as a prejudice to the plaintiff.

## POINT II

### DEFENDANTS WILL NOT BE PREJUDICED BY THE PROPOSED AMENDMENTS

Amendment of the complaint will not serve to prejudice the defendants. The most important factor in determining whether leave to amend the complaint should be granted is whether the opposing party will be prejudiced if the movant is permitted to alter the pleadings.[16] "Merely claiming prejudice will not lead to denial of leave to amend. The nonmoving party must show that it was unfairly disadvantaged or deprived of the opportunity to present factors or evidence."[17]

Here, the New Defendants sought to be added were not deprived of the opportunity to present evidence. The New Defendants have first-hand knowledge of the roles they played in the

---

[16] *See* Leary, 2007 U.S. Dist. LEXIS 74202, at *8 (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)).
[17] *Id.* (citing Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc., 663 F.3d 419, 426 (3d Cir. 1981)).

investigation into the identity of the John Doe, later identified as Michael Simko and therefore, are not deprived of the opportunity to present factors or evidence. The New Defendants were in the position to collect any evidence gathered.

In Leary, the PHS argued that because the medical care in question took place over three years, much of the information and many persons familiar with the allegations set forth in the complaint were no longer accessible.[18] The Leary Court held that PHS's argument that the evidence related to and people involved with the incident may not be discoverable is without merit[19] and that neither the PHS nor the City have alleged the "undue prejudice" sufficient to justify denial of plaintiff's motion for leave to amend.[20] As a result, the Leary Court granted the plaintiff's motion to amend the complaint, finding that the parties named in the original complaint, who were employees of PHS and the City, were on notice, at the time the original complaint was filed, that they needed to preserve the evidence.[21]

In Leary the Plaintiff sought to add PHS and the City in his amended complaint while the employees of PHS and City were named in the original complaint. In the present case, the opposite takes place. Plaintiff is seeking to add the employees of Newark and Newark PD while Newark and Newark PD were named in the original complaint. This distinguishing factor in the instant case only makes for a stronger argument that evidence related to and people involved with the incident are discoverable. In fact, the New Defendants sought to be added were employed by already named defendants and were directly involved in the investigation and are most familiar with the allegations set forth in the complaint.

---

[18] See Leary, 2007 U.S. Dist. LEXIS 74202, at *8.
[19] Id.
[20] Id. at *10-11.
[21] Id. at *8.

Moreover, Gary S. Lipshutz's response to our request for consent to the amended complaint with a conditional limited consent to the amendment as to Detective Michael Chirico, authorizing only to substitute Michael Chirico for John Does so long as the complaint would not ask for punitive damages, further supports the proposition that the representation was shared and any preserved evidence by Defendants named in the Original Complaint is available to the New Defendants so as to preclude the New Defendants from asserting that they were unfairly disadvantaged or deprived of the opportunity to present factors or evidence.

Ultimately, no prejudice will result to the New Defendants if the changes to the original complaint are allowed at this point in the proceedings.

## POINT III

### THE CLAIMS IN THE PROPOSED AMENDED COMPLAINT RELATE BACK TO THE ORIGINAL COMPLAINT FOR PURPOSES OF STATUTE OF LIMITATIONS

Plaintiff has met the standards under Rule 15(c) for the application of "relation back". Therefore, the proposed amendments to the original complaint are not barred by the statute of limitations and Plaintiff's motion should be granted.

"A claim is futile and leave to amend may be denied properly "where the amendment would not withstand a motion to dismiss."[22]  In the present case, the proposed amendments are not barred by the statute of limitations because the amendments relate back to the filing of the original Complaint.

When evaluating § 1983 claims, federal courts apply the forum state's statute of limitations for personal injury actions.[23]  The State of New Jersey has a two-year statute of

---

[22] *See* Leary, 2007 U.S. Dist. LEXIS 74202, at *13 (citing Massarky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)).
[23] Sameric Corp. of Del, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).

limitations for personal injury actions.[24]  Because the limitations period on the Plaintiff's claim

has run, the amended complaint will only be permitted if it can relate back to the original

complaint.[25]

Although the incident in question occurred over six years ago, the original complaint was

filed within the two-years provided for by the statute of limitations, as measured from the time

the Plaintiff learned though law enforcement's investigative efforts on January 11, 2012 that her

son has been found dead by the Newark Police in November 2007, identified shortly thereafter,

and buried in August of 2008.

Federal Rules of Civil Procedure 15(c)(1) allows amended complaints that add new

parties but an amended complaint will only relate back to the original complaint and not be time

barred, when[26]:

> …
>
> (B) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (i) has received such notice of the action that it will not be prejudiced in the defending on the merits; and (ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The word "changes" in rule 15(c)(1)(C) has been read liberally to cover adding and dropping

parties, as well as substituting parties.[27]  In the Third Circuit, replacing a John Doe defendant

with a named defendant is equivalent to changing a party or naming a new party under Rule

---

[24] N.J. Stat. Ann. Sec. 2A:14-2.
[25] Urrutia v. Harrisburg County Police Dept. et al., 91 F.3d 451, 457 (3d Cir. 1996).
[26] Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 189 (3d Cir. 2001).
[27] Lundy v. Adamar of N.J., Inc., 34 F.3d 1173, 1192-93 & n.13 (3d Cir. 1994).

15(c).[28] In the instant case, Plaintiff moves to file an Amended Complaint to substitute now known individuals for "John Does," the identities of whom came to light during the current defendants' motions to dismiss and limited discovery process.

### 1.  15 (c)(1)(B): Same Conduct, Transaction, or Occurrence

"Rule 15(c) requires "a common core of operative facts" between the original complaint and the amended complaint for the claims in the amended complaint to arise from the same conduct, transaction, or occurrence as the original complaint."[29]

While maintaining the same cause of action based on the details in the allegation, the amended claim provides further details about the factual scenario pertaining to the identities of the employees of Newark PD and their level of involvement in the investigation of Michael.  The amended complaint provides support for the proposition that New Defendants who were responsible for the investigation, identification, and/or handling of reports of missing persons and/or unidentified deceased individuals and/or the disposal of the remains of unidentified deceased persons, acted in concert but at the same time in a disjointed manner, in the deprivation of the Plaintiff's constitutional rights.  Plaintiff's proposed amendment to the original complaint includes more specific information relating to Newark's investigation into the location of Michael Simko who was reported missing.  Further, the additional facts in the amended complaint provide greater detail in support of Plaintiff's § 1983 claim.

Consequently, the amendment asserts a claim that arose out of the same conduct, transaction, or occurrence set out in the original complaint.

### 2.  15(c)(1)(C)(i): Notice and Absence of Prejudice

---

[28] Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003).
[29] *See* Leary, 2007 U.S. Dist. LEXIS 74202, at *16 (citing Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004)).

In order for the amended complaint to relate back to the original complaint, Rule 15(c)(1)(C)(i) requires notice to the nonmoving party and an absence of prejudice to the nonmoving party.[32] "Prejudice and notice are closely intertwined in the context of Rule 15(c)(1)(C)(i), as the amount of prejudice a defendant suffers under 15(c)(1)(C)(i) is a direct effect of the type of notice he receives."[33] Under 15 (c)(1)(C)(i), notice does not have to be by service of process and can be either actual or constructive.[34] In <u>Singletary v. Pennsylvania Department of Corrections</u>, the Third Circuit recognized two ways in which constructive notice can meet the requirements of 15(c)(1)(C)(i): The "shared attorney method" and the "identity of interest method."[35] The shared attorney method "is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action."[36] In determining whether a party to be added to an amended complaint received notice under the shared attorney method, the inquiry "is whether notice of the institution of this action can be imputed to [the party to be added] within the relevant 120 days period."[37] As discussed below, the shared attorney method of notice applies to the New Defendants Plaintiff is seeking to substitute for "John Does."

If Gary S. Lipshutz is the defense counsel for Newark and Newark PD, the defendants named in the original complaint, then it follows that legal representation would extend to the individuals plaintiff now seeks to substitute as they were employees of City of Newark and/or Newark Police Department and as such, notice would be imputed to them. Moreover, Gary S.

---

[32] Singletary, 266 F.3d at 194 (Citing Urrutia, 91 F.3d at 458).
[33] *Id.* at 194 n.3.
[34] *Id.* at 194-95.
[35] *Id.* at 195-200.
[36] *Id.* at 196 .
[37] *Id.*

Lipshutz's response to our request for consent to amend the complaint with a conditional limited

consent to the amendment as to Detective Michael Chirico, authorizing only to substitute

Michael Chirico for John Does so long as the complaint would not ask for punitive damages,

further supports the proposition that the representation will be shared by the defendants named in

the original complaint and the individuals sought to be added in the amended complaint.  Given

the shared representation, timely notice of the institution of this action is imputed to the New

Defendants Plaintiff is seeking to substitute for "John Does."

### 3.  15(c)(1)(C)(ii): But for Mistake Concerning the Identity of the Proper Party, Action Would Have Been Brought Against Party

In order for the proposed amendment to relate back to the original complaint and not be

time barred, the final requirement of Rule 15(c)(1)(C)(ii) must be met.  The rule requires that

within the time period provided by the Federal Rule of Civil Procedure 4(m), "the party to be

brought in by the amendment ... knew or should have known that, but for a mistake concerning

the identity of the proper party, the action would have been brought against the party."[38]

In the Singletary case, the Third Circuit defined the meaning of "mistake" in rule

15(c)(1)(C)(ii).  Singletary was a placeholder relation back case in which the plaintiff sought to

amend the complaint after the running of the statute of limitation to replace "John Doe" with a

defendant's name.  The Singletary Court held that the amendment changing the party could not

relate back because the new party had not received the requisite notice required by the rule.[42]

However, Chief Judge Becker still proceeded to consider the issue of "mistake" and affirmed the

Third Circuit's view for the proposition that Plaintiff's lack of knowledge of a particular

defendant's identity is in the purview of "mistake" under Rule 15(c)(1)(C)(ii) and that a "John

---

[38] Leary, 2007 U.S. Dist. LEXIS 74202, at *21.
[42] Singletary, 266 F.3d at 186.

Doe" complaint would relate back in such case.[43]   Judge Becker pointed out that the rule struck a

balance between the interests of the parties by allowing the plaintiff to file and gather

information through discovery so that he could name the proper party, while also providing

fairness to the new defendant since the requirements of the rule took care to ensure that the

defendant would be protected from the surprise claims.[44]

      As seen in <u>Singletary</u>, the present case is a placeholder case in which the Plaintiff seeks

to amend the complaint after the running of the statute of limitation and substitute proper parties

for "John Does."  Plaintiff's lack of knowledge constitutes "mistake" as espoused in the

Singletary decision for purposes of satisfying Rule 15(c)(1)(C)(ii).  Plaintiff had no knowledge

as to the identities and involvement of officers who Plaintiff now seeks to include by amended

complaint.  It should be noted, that Plaintiff's lack of knowledge did not result by her failure to

investigate into the identities of the New Defendants involved in the investigation of her missing

son, but quite the opposite.  Plaintiff's lack of knowledge into the identities and involvement of

the New Defendants is demonstrated by the Office of the City Clerk's response to our OPRA

request, providing us with only redacted NYPD procedural document but no records pertaining

to the investigation of the death of Michael Simko.  Plaintiff's mistake as to the identities and

involvement of the New Defendants in the investigation was a direct consequence of Newark

PD's incompetent and passive investigation efforts into the matter of Michael Simko.  Through

discovery Plaintiff learned the identities of New Defendants.  However, the information came to

the attention of the Plaintiff after Newark's motion to dismiss was fully briefed, disclosing a

greater involvement by Newark in the investigation than Newark has originally indicated.

---

[43] Singletary, 266 F.3d at 200-01.
[44] *Id.* at 201 n.5.

Arthur v. Maersk, Inc.[45] lends further support that lack of knowledge constitutes mistake

for the purpose of Rule 15(c)(1)(C)(ii).  In Arthur, the Third Circuit considered an appeal by a

merchant seaman who had sued in admiralty to recover damages for injuries sustained aboard a

number of vessels.[46]  The plaintiff sued his employers, as owners of the ships, only to discover

after the statute of limitations had run that the United States Navy was the owner of the ships,

and therefore the United States was the sole party liable for his claims.[47]  On appeal, the United

States argued that the "mistake" prong of 15(c)(1)(C)(ii) was not satisfied because plaintiff was

an experienced seaman and he should have recognized that the designation "U.S.N.S. on the

ships signified the ships were owned by the United States.[48]  The Third Circuit rejected this

argument and found that the plaintiff's mistake in identifying the proper defendant, which was

based on a lack of knowledge, constituted mistake for purpose of 15(c)(1)(C)(ii).[49]  The Arthur

Court raised the issue of whether a mistake arising from the plaintiff's lack of knowledge of the

agency relationship between the government and the ship operators would satisfy the relation

back rule.[50] In Arthur, the Court held that the difference in the cause of the error was irrelevant

for the purpose of the relation back rule, which the court viewed designed to protect plaintiffs

when those "errors render the plaintiff unable to identify the potentially liable party and unable

to name that party in the original complaint.[51]

If an experienced seamen's mistake in not identifying the proper owner of a ship, is

excusable under 15(c)(1)(C)(ii), despite marking on the ship identifying the owner, then it

follows that the Plaintiff's mistake in not identifying employees of Newark PD, whose identities

---

[45] Arthur v. Maersk, Inc., 434 F.3d 196 (3d Cir. 2006).
[46] Id. at 199-200.
[47] Id. at 200-02.
[48] Id.  at 207.
[49] Id.
[50] Id. at 208.
[51] Id.

were known or should have been known only to the existing defendants City of Newark and Newark PD is also excusable under 15(c)(1)(C)(ii),. Thus, in the instant case, the Plaintiff's mistake in not naming New Defendants as the defendants in the original complaint, constitutes a mistake for purposes of 15(c)(1)(C)(ii).

## CONCLUSION

Consistent with the liberal standard that is applied to motions to amend under Rule 15 and for reasons identified above, the Plaintiff requests that the Court grant Plaintiff's motion for leave to file the proposed amended complaint.

Respectfully Submitted,
PETER E. BRISKIN
FISHBEYN & BRISKIN, LLC
Attorney for the Plaintiff, Zdenka Simkova

By: _____

Dated: April 23, 2015

22